# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

PRIORITY INTERNATIONAL ANIMAL
CONCEPTS, INC.,

        Plaintiff,

    v.                                 Case No. 12-C-0150

JOHN BRYK, CHARLES GLEISNER,
and KEITH LOWE,

        Defendants.

---

## ORDER GRANTING IN PART AND DENYING IN PART
## MOTION FOR PARTIAL DISMISSAL

---

Plaintiff Priority International Animal Concepts, Inc. (Priority) filed this action against a former employee, Defendant Charles Gleisner, and two former consultants, Defendants John Bryk and Keith Lowe. Priority claims that the defendants conspired together to use confidential product and proprietary information they obtained from Priority to set up a competing business. The complaint asserts a variety of claims against the defendants, including false advertising, breach of contract, misappropriation of trade secrets, breach of duty of loyalty, and conspiracy, and seeks injunctive relief and damages. Though originally filed in state court, the case was removed based on an assertion of federal diversity jurisdiction. 28 U.S.C. § 1332. Presently before the Court is defendant Gleisner's motion for partial dismissal for failure to state a claim. (ECF No. 22.) For the reasons stated herein, Gleisner's motion will be granted in part and denied in part.

**BACKGROUND**

At this stage of the proceeding, the facts before the Court are those alleged in the complaint. According to the complaint, Priority is in the business of using microbiological-based technologies to enhance digestive functions in livestock. (Compl. ¶ 1.) Specifically, Priority makes and sells the Priority Ration program, a combination of two products, P-One (which is fed to milking animals) and DCP (which is fed pre-calving) along with dietary formulations which are unique and novel to Priority. (*Id.* ¶ 12.) Priority's products and dietary program are sold throughout the United States by direct sales to customers and sales through Resellers. (*Id.* ¶ 1.)

Gleisner resides in Ohio and was hired by Priority as a "sales employee" in September 2010. (*Id.* ¶¶ 5, 28.) He was hired to facilitate sales of the P-One Program and service Priority customers, beginning in Ohio and expanding to customers in other states. (*Id.* ¶ 28.) As part of his engagement, Gleisner signed two separate agreements with Priority: a Confidentiality Agreement and an Employee Non-Compete Agreement. (*Id.* ¶¶ 29–30.) Gleisner also attended a three-day training session from October 17 through October 19, 2010, at which time he was allegedly given information marked as trade secret and confidential. (*Id.* ¶ 17.) Gleisner allegedly attended additional training in May 2011. (*Id.* ¶ 18.) Priority also provided Gleisner with a laptop computer with licensed software installed and a cell phone for business use. (*Id.* ¶ 35.)

In early 2011 Gleisner, along with co-defendants John Bryk and Keith Lowe who had entered into separate agreements with Priority, began planning to form a business partnership which would directly compete with Priority. (*Id.* ¶ 53.) The three defendants intended to use Priority's confidential information in the new business. (*Id.* ¶ 54.) In May 2011 Gleisner was directed by Bryk and Lowe to record and retain copies of confidential information and trade secrets

disseminated during Priority training in Manitowoc, Wisconsin, which related to the Priority Ration

program. (*Id.* ¶ 56.) Gleisner, Bryk, and Lowe represented to the relevant purchasing public that

Commodity Blenders Pak (their competing product) was the same as P-One and could be used with

the Priority Ration program. (*Id.* ¶¶ 58–60.) Gleisner, Bryk, and Lowe then marketed their

competing product as Goldline, which they represented to be the same as P-one, along with a second

product, Goldline Transition, which they represented to be the same as Priority DCP. (*Id.* ¶ 61.)

Gleisner was terminated by Priority in early November 2011. (*Id.* ¶ 32.) Gleisner returned

his laptop to Priority on December 2, 2011, but only after deleting all data from the hard drive. (*Id.*

¶ 36.) Gleisner also returned the cell phone on December 2, 2011, but again only after deleting all

contacts and other information from the cell phone memory. (*Id.* ¶ 39.) Thereafter, Priority filed

this suit in February 2012. (ECF No. 1.)

The complaint lists the following claims against Gleisner: False Advertising (Count I),

Misappropriation of Trade Secrets (Wis. Stat. § 134.90) (Count II), Injunctive Relief (Restrictive

Covenants) (Count III), Computer Fraud and Abuse (Count IV), Breach of Contract (Count VII),

Breach of Agency Duty (Count VIII), and Conspiracy (Count XI). Along with the complaint,

Priority filed a motion for a preliminary injunction requiring the defendants to return certain

documents and materials to Priority and enjoining them from using or disclosing certain information

concerning the formulation or price of Priority's products or steering customers away from Priority.

The parties reached agreement on the terms of an injunction, and on March 7, 2012, the Court

entered an Order for Injunctive Relief based upon a stipulation signed by all parties, including

Gleisner. (ECF No. 19.) Gleisner then filed a motion for dismissal of Counts III, IV, VII and VIII.

**LEGAL STANDARD**

The standards governing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure are well established. Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." In deciding whether it is sufficient to state a claim, the court must "accept[ ] the complaint's well-pleaded allegations as true and draw[ ] all favorable inferences for the plaintiff." *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, the court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The allegations must be sufficient "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

**DISCUSSION**

**A. Counts III and VII - Restrictive Covenants**

Gleisner seeks dismissal of Priority's third and seventh claims for relief on the ground that the restrictive covenants upon which they are based are unenforceable as a matter of law. As

4

Gleisner points out, the Counts III and VII are the same; only the form of relief requested is different. Count III seeks only injunctive relief, and Count VII seeks damages. Both counts are based on the Confidentiality Agreement and the Non-Compete Agreement that Gleisner signed as a condition of his employment with Priority. Gleisner argues that both agreements are invalid under Section 103.465 of the Wisconsin Statutes which governs restrictive covenants. At the very least, Gleisner contends, Count III should be dismissed since injunctive relief is simply a remedy or form of relief, not a separate claim.

I agree with Gleisner that Count III should be dismissed. Injunctive relief is one of the remedies Priority seeks for the breach of contract alleged in Count VII. Treating it as a separate claim only adds to the length of the complaint and unnecessarily complicates the case. Accordingly, Count III will be dismissed. Gleisner's remaining argument cannot be as quickly answered.

Wisconsin law seeks to "encourage[ ] the mobility of workers." *Gary Van Zeeland Talent, Inc. v. Sandas*, 84 Wis.2d 202, 214, 267 N.W.2d 242 (1978). As a result, Wisconsin courts look with suspicion on covenants not to compete. *Farm Credit Services of North Cent. Wisconsin, ACA v. Wysocki*, 2001 WI 51, ¶ 9, 243 Wis.2d 305, 627 N.W.2d 444. Consistent with this policy, the Wisconsin Supreme Court has adopted several "canons of construction" which it applies to covenants not to compete: (1) such covenants are prima facie suspect; (2) they must withstand close scrutiny to pass legal muster as being reasonable; (3) they will not be construed to extend beyond their proper import or further than the language of the contract absolutely requires; and (4) they are to be construed in favor of the employee. *Id.* (citing *Streiff v. American Family Mut. Ins. Co.*, 118 Wis. 2d 602, 611, 348 N.W.2d 505 (1984)). This policy is also reflected in Section 103.465, which states:

A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any covenant, described in this subsection, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.

Wis. Stat. § 103.465 (2009-10).

The statute contains two main principles. The first is that non-compete agreements are valid "only if the restrictions imposed are reasonably necessary for the protection of the employer." *Star Direct, Inc. v. Dal Pra*, 2009 WI 76, ¶ 20, 319 Wis.2d 274, 767 N.W.2d 898. In order to satisfy this requirement, a provision must "(1) be necessary for the protection of the employer, that is, the employer must have a protectable interest justifying the restriction imposed on the activity of the employee; (2) provide a reasonable time limit; (3) provide a reasonable territorial limit; (4) not be harsh or oppressive as to the employee; and (5) not be contrary to public policy." *Id.*

The second principle is that if any one portion of the covenant is unenforceable, the entire covenant falls, even if the remaining portions would be enforceable. The Supreme Court qualified this principle in *Star Direct*, however, by holding that where an employment contract contains divisible covenants, the fact that one is found an unreasonable restraint does not invalidate the other if it is otherwise reasonable. 2009 WI 76, at ¶ 78. Restrictive covenants are divisible, the Court held, "when the contract contains different covenants supporting different interests that can be independently read and enforced." *Id.* Under the current state of the law, only when the covenants are not divisible will a finding that one portion is unreasonable and therefore unenforceable result in the conclusion that the entire covenant is unenforceable.

Gleisner argues that based on these principles, the Confidentiality and Non-Compete

Agreements he signed are invalid and unenforceable. It thus follows, he argues, that Counts III and

VII of the Complaint should be dismissed for failure to state a claim. I will address each Agreement

separately, but before doing so, I will briefly address Priority's threshold argument that Gleisner's

motion to dismiss its requests for injunctive relief is moot.

Priority argues as an initial matter that Gleisner's motion is moot as to its claim for

injunctive relief because he has stipulated to the entry of an injunction that provides the very relief

sought in Count III. Priority offers the same argument in response to Gleisner's motion to dismiss

its Computer Fraud and Abuse claim (Count IV). Because the only relief sought in Counts III and

IV is the very injunctive relief to which the parties have stipulated, Priority contends that Gleisner's

motion to dismiss those claims is moot.

Priority's argument is based on a misreading of the injunction and the stipulation upon

which it is based. The stipulation was intended to resolve Priority's motion for a preliminary

injunction; the relief agreed to was not intended to be permanent or to resolve the merits of any of

Priority's claims. The stipulation provided in pertinent part:

> Entry into this stipulation shall be without prejudice to any claim, defense, or
> objection that any of the parties may have in relation to the entry of a temporary
> restraining order, the pending motion for preliminary injunction other than as
> resolved by this stipulation, or the underlying merits and that by entering into this
> stipulation, none of the parties waives or in any way compromises any such claim,
> defense, or objection, other than as resolved by this stipulation.

(ECF No. 18, ¶ 13.) Thus, the injunction should be considered a temporary measure that did not

finally resolve any matter in dispute. Neither Gleisner, nor any of the other parties, waived any

defense or admitted to any allegation in agreeing to entry of the preliminary order. Entry of the

7

injunction did not render moot Gleisner's argument that the agreements on which the injunctive

relief was sought are invalid, and it is to the validity of those agreements that I now turn.

**1. The Confidentiality Agreement.**

Under the terms of the Confidentiality Agreement, Gleisner agreed to maintain the

confidentiality of "Confidential Information" and not disclose or disseminate such information to

any third party. "Confidential Information" is defined in the Agreement as "proprietary, confidential

information owned by Priority pertaining to Priority products for dairy cattle and calves, technology

related to Priority IAC, Inc. products and the P-One Program nutritional parameters." (Compl. Ex.

2.) (underlining original). Gleisner further agreed that he would not use the Confidential

Information for his own benefit or to the detriment of Priority without first receiving the express

written consent of Priority, and that he would use the highest degree of care to safeguard it. He

agreed that upon Priority's request he would return to Priority any and all documents or other media

in his possession containing such Confidential Information. Finally, the Agreement provided that

it would be governed and construed according to Wisconsin law, and that it did not apply to any

information that is in the public domain or enters the public domain without breach of the

Agreement. (Compl., Ex. 2.)

Gleisner contends that the Confidentiality Agreement is governed by, and unenforceable

under, Section 103.465. He notes that the Wisconsin Supreme Court has held that such

confidentiality provisions are subject to Section 103.465 because they constitute a restraint of trade.

*See Tatge v. Chambers & Owen, Inc.*, 219 Wis. 2d 99, 112, 579 N.W.2d 217, 222 (1998) (noting

that a provision that "seeks to shield its customer data, programs, and business practices from

competitors' eyes" . . . "is the essence of a trade restraint"). And because the prohibition contains

8

no time limit, Gleisner contends the Agreement is clearly invalid. *See Gary Van Zeeland Talent, Inc. v. Sandas*, 84 Wis.2d 202, 267 N.W.2d 242 (1978) (holding confidentiality provision of contract prohibiting disclosure of customer list unenforceable because it lacked a time limitation). Gleisner also argues the Confidentiality Agreement is invalid because it does not contain any territorial restriction and because it is not necessary for the protection of Priority. Finally, Gleisner argues that the Agreement does not adequately define "Confidential Information" so that he is left to guess what information is included. (Gleisner Br. In Supp. of Mot. for S.J., ECF No. 23, at 8–9.)

Priority, on the other hand, contends that the Confidentiality Agreement is not a restraint on trade but instead seeks to protect only Priority's trade secrets. The distinction is crucial because if the Agreement is limited to trade secrets, then it is governed by the Uniform Trade Secrets Act, Section 134.90 of the Wisconsin Statutes. *Nalco Chem. Co. v. Hydro Technologies, Inc.*, 984 F.2d 801, 803 (7th Cir. 1993). "Under section 134.90, no time limit is required on trade secret restrictions." *Id.* Nor is a territorial restriction required. Laws protecting trade secrets in general, and the Uniform Trade Secrets Act in particular, are exceptions to the general policy against restraints of trade. *Van Zeeland*, 84 Wis. 2d at 209, 267 N.W.2d at 246. Laws protecting trade secrets are seen as "an attempt to enforce morality in business." *Abbott Laboratories v. Norse Chemical Corp.,* 33 Wis.2d 445, 454, 147 N.W.2d 529, 533 (1967). The protection afforded to trade secrets is not limited by time or place.

Gleisner's argument that the Confidentiality Agreement he signed is invalid thus depends on whether the Agreement has as its purpose the protection of trade secrets. Wisconsin law defines trade secrets as:

9

information, including a formula, pattern, compilation, program, device, method, technique or process to which all of the following apply:

> 1. The information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> 2. The information is the subject of efforts to maintain its secrecy that are reasonable under the circumstances.

Wis. Stat. § 134.90(1)(c). The "Confidential Information" covered by the Confidentiality Agreement Gleisner signed would seem to fall within this definition. To repeat, the term "Confidential Information," as used in the Agreement applies to "proprietary, confidential information owned by Priority pertaining to Priority products for dairy cattle and calves, technology related to Priority IAC, Inc. products and the P-One Program nutritional parameters." (Compl., Ex. 2.) Unlike the provisions at issue in *Nalco* and *Van Zeeland*, the Agreement here appears directed not at customer information but at the very products that Priority sells, as well as the formulas and technology it uses to produce them. This is precisely the type of information the Act is intended to protect. While the Court cannot conclude on the record as it now stands that the information constitutes trade secrets as a matter of law, it is clearly unable to conclude that the Agreement is invalid. Accordingly, Gleisner's motion to dismiss Count VII will be denied to the extent that Count VII seeks relief for breach of the Confidentiality Agreement.

**2. The Non-Compete Agreement**

Gleisner also signed a Non-Compete Agreement as a condition of his employment at Priority. Under the terms of that Agreement, Gleisner agreed that upon termination of his employment, he would not for a period of three years "compete with the business of the Company

or its successors or representatives and shall not directly or indirectly, as an owner, officer, director, employee, consultant, or stockholder, engage in any business associated with microbials for the Dairy Industry including but not limited to lactating dairy cows and replacement heifers." (Compl., Ex. 3.) Gleisner argues that the Non-Compete Agreement violates Section 103.465 in that it is not limited to a specified territory, is of an unnecessarily long duration, and prohibits activity that has no relation to the nature of his work for Priority. The Agreement, Gleisner contends, is fatally over broad and therefore invalid.

Priority argues as an initial matter that Section 103.465 does not apply to the Non-Compete Agreement because it is governed by Ohio law, rather than the law of Wisconsin. The Confidentiality Agreement expressly states that it is governed by Wisconsin law, but the Non-Compete Agreement is silent on the issue. Priority argues that based on Wisconsin choice-of-law principles, Ohio law (which is more favorable to restrictive non-compete clauses) applies. Priority is wrong.

In Wisconsin, the "'first rule' of choice-of-law is that the law of the forum should presumptively apply unless it becomes clear that nonforum contacts are of great significance." *Henderson*, 615 F. Supp. 2d 804, 808 (E.D. Wis. 2009) (quoting *Drinkwater v. Am. Family Mut. Ins. Co.*, 290 Wis. 2d 642, 658 (Wis. 2006)). Under Wisconsin law, relevant factors include: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the respective domiciles, places of incorporation and places of business of the parties. *Henderson*, 615 F. Supp. 2d at 809. This approach is not a quantitative one in which the court merely counts each state's contacts; instead,

11

the court must qualitatively assess which contacts are significant and where those contacts are found. *Henderson*, 615 F. Supp. 2d at 809.

Not all of these factors may be determined from the pleadings, such as the location in which the parties engaged in any negotiation of the Non-Compete Agreement. Nonetheless, a review of the other factors suggests Wisconsin law should apply. Admittedly, Gleisner is a resident of Ohio and was hired as a sales employee "beginning in Ohio and expanding to other customers in other states." (Compl. ¶¶ 5, 28.) Gleisner eventually dealt with "existing and potential customers in Ohio, New York, and Virginia." (*Id.* ¶¶ 67–71.) But Priority's allegations point to Wisconsin as the most significant site for both performance of the contract and location of the contract's subject matter. Priority is based in Manitowoc, Wisconsin. (*Id.* ¶ 1.) Priority's confidential information and trade secrets are maintained at its Wisconsin headquarters and were disseminated to Gleisner at training sessions here. (*Id.* ¶¶ 17–18.) Gleisner was directed by the other defendants to "record and retain copies of confidential information and trade secrets" he received in Manitowoc. (*Id.* ¶ 56.) Additionally, as Priority alleges, Gleisner performed duties "within . . . the State of Wisconsin." (*Id.* ¶ 8.) Furthermore, based on the fact that Priority specifically directed that the Confidentiality Agreement it had Gleisner sign be governed by Wisconsin Law, it appears its failure to name any state law in the Non-Compete Agreement was merely an oversight. If it wanted Ohio or some other state's law to apply, it easily could have stated so in the Agreement. In view of the fact that it expressly elected Wisconsin law in the Confidentiality Agreement, asserted a separate claim against Gleisner under the Wisconsin Computer Crimes Act, Wis. Stat. § 943.70, and relies on Wisconsin law in defending its other claims, it would seem strangely incongruous to apply Ohio law to the Non-Compete Agreement. Finally, Priority chose Wisconsin as the location for this

litigation. Particularly in light of the presumption in favor of application of the forum state's law, I conclude the analysis of these contacts favors the application of Wisconsin law. At a minimum, the combination of these factors do not "clearly" establish that Ohio had the most significant relationship with the contract.

Under Wisconsin law, the Non-Compete Agreement is unenforceable. The Wisconsin Supreme Court has stated that the "specified territory" language in Section 103.465 requires a restrictive covenant to contain a "reasonable territorial limit." *Star Direct*, 319 Wis. 2d at 288. The Wisconsin Supreme Court has also explained that there can be an "activity dimension" to the analysis of the territory restriction. *Rollins Burdick Hunter, Inc. v. Hamilton*, 101 Wis. 2d 460, 465 (1981). To be enforceable, the limitations in a restrictive covenant need to be limited to the scope of the employee's job duties. "It is generally proper for the employer, by such a contract, to exact a covenant not to compete in such territory as may constitute the field of the employee's activities, but the covenant can go no further than this." *Behnke v. Hertz Corp.*, 70 Wis. 2d 818, 824 (1975); *see also Wisconsin Ice & Coal v. Lueth*, 213 Wis. 42, 47 (1993). Accordingly, a business activity restraint should be "narrowly drawn." *Nalco Chemical Co. v. Hydro Technologies*, 984 F.2d 801, 805 (7th Cir. 1993). Courts have therefore refused to uphold restrictive covenants in which the business activity restraint has been too broad. *See, e.g.*, *Estate of Schroeder v. Gateway Transp. Co.*, 53 Wis. 2d 59, 69 (1971) (restriction designed to prevent employee from working elsewhere "in the transportation industry" unenforceable). The Non-Compete Agreement here does not contain an activity restraint, nor does it contain a territory restraint.

In light of the aforementioned precedent, I conclude that the Non-Compete Agreement is invalid. Indeed, Priority offers no argument that the Agreement is valid under Wisconsin law,

13

arguing instead that Ohio's law applies. Accordingly, to the extent Count VII seeks relief for violation of the Non-Compete Agreement, Gleisner's motion to dismiss is granted.

## B. Count IV - Computer Crimes

Gleisner also moves to dismiss Priority's claim for relief under Section 943.70 of the Wisconsin Statues, which pertains to computer crimes. (ECF No. 23 at 17.) Section 943.70 provides:

> Whoever willfully, knowingly and without authorization does any of the following may be penalized as provided in pars. (b) and (c):
>
> 1. Modifies data, computer programs or supporting documentation.
>
> 2. Destroys data, computer programs or supporting documentation.
>
> 3. Accesses computer programs or supporting documentation.
>
> 4. Takes possession of data, computer programs or supporting documentation.
>
> 5. Copies data, computer programs or supporting documentation.
>
> 6. Discloses restricted access codes or other restricted access information to unauthorized persons.

Wis Stat. § 943.70.

According to the Complaint, Priority provided Gleisner with a laptop (with licensed software installed) and a cell phone. (Compl. ¶ 35.) Priority further alleges that after his November 2011 termination, Gleisner returned the computer with all data deleted and with his contacts deleted from the cell phone. (*Id.* ¶¶ 36–39.) According to Priority, the elimination of this information was done "intentionally" and Gleisner's actions were "without authority or in excess of his authority." (*Id.* ¶¶ 122–24.) Priority has thus properly pleaded a claim under § 943.70 against Gleisner. The fact that Gleisner obtained the data with authorization does not defeat the claim. Priority has properly

14

alleged Gleisner eliminated all data in violation of the statute and the claim will thus be allowed to stand. Gleisner's motion to dismiss this claim is therefore denied.

## C. Count VIII - Breach of Agency Duty

Gleisner also moves to dismiss Priority's claim that he breached the duty of loyalty he owed to his employer by disclosing and using confidential information, establishing an entity to compete against Priority, soliciting Priority customers, and misrepresenting Priority's product. Gleisner argues that the claim must fail because he did not owe Priority a duty of loyalty. (ECF No. 23 at 16.) Gleisner seems to believe that only employees who owe a fiduciary duty to their employer owe such employer a duty of loyalty. As a sales employee, Gleisner contends that he owed no such duty to Priority. It therefore follows, he contends, that Priority's claim that he breached his duty of loyalty must fail.

It is not just an employee who has a fiduciary duty to his employer who owes his employer a duty of loyalty, however. Breach of a duty of loyalty is not coterminous with a breach of fiduciary duty. *See InfoCorp, LLC v. Hunt*, 2010 WI App 3, ¶ 16, 323 Wis.2d 45, 780 N.W.2d 178 (analyzing "the duty of loyalty owed by an employee who is not an officer or director, and does not have equivalent policy making authority"); *Aon Risk Services, Inc. v. Liebenstein*, 2006 WI App 4, ¶ 26, 289 Wis.2d 127, 710 N.W.2d 175 ("There is no doubt but that at least key employees in Wisconsin owe to their employer common-law duties of loyalty-the precise nature of the employment necessary to trigger those duties and, also, the scope of those duties are often blurred at the edges."), abrogated on other grounds by *Burbank Grease Services, LLC v. Sokolowski*, 2006 WI 103, ¶ 33, 294 Wis.2d 274, 717 N.W.2d 781. Moreover, "[w]hether an employee is a 'key employee' depends on the

15

precise nature of his or her employment duties, which determination requires a factual inquiry."

*Burbank Grease*, 2006 WI 103, ¶ 42.

It is not clear from the complaint what Gleisner's duties in the overall operation of Priority were. Was he the only person in sales, the head of a department, or simply one among many? What power and authority did he have? Without more information, it is not possible to determine as a matter of law whether Gleisner's employment was such as to give rise to a duty of loyalty and whether the conduct alleged amounts to a breach of that duty. Accordingly, Gleisner's motion to dismiss Count VIII will be denied.

## CONCLUSION

In conclusion, Priority's claims under the Non-Compete Agreement are dismissed, as is its separate claim for injunctive relief. Its request for injunctive relief will remain in the complaint as part of the ad damnum clause or prayer for relief. In all other respects, the motion is denied. Gleisner's motion for partial dismissal (ECF No. 22) is therefore GRANTED in part and DENIED in part.

**SO ORDERED** this ____18th____ day of May, 2012.

        s/ William C. Griesbach _____
        William C. Griesbach
        United States District Judge