UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PRIORITY INTERNATIONAL ANIMAL
CONCEPTS, INC.,

          Plaintiff,

   v.                                                Case No. 12-C-150

JOHN BRYK, CHARLES GLEISNER, and
KEITH LOWE,

          Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR PARTIAL DISMISSAL**

      Plaintiff Priority International Animal Concepts, Inc. (Priority) filed this action against a former employee, Defendant Charles Gleisner, and two former consultants, Defendants John Bryk and Keith Lowe. Priority claims that the defendants conspired together to use confidential product and proprietary information they obtained from Priority to set up a competing business. The complaint asserts a variety of claims against the defendants, including false advertising, breach of contract, misappropriation of trade secrets, breach of duty of loyalty, and conspiracy, and seeks injunctive relief and damages. Though originally filed in state court, the case was removed based on an assertion of federal diversity jurisdiction. 28 U.S.C. § 1332. Presently before the Court is defendant Bryk's motion for partial dismissal for failure to state a claim. (ECF No. 20.) For the reasons stated herein, Bryk's motion will be granted in part and denied in part.

## BACKGROUND

At this stage of the proceeding, the facts before the Court are those alleged in the complaint, which by rule are accepted as true. Priority is in the business of using microbiological-based technologies to enhance digestive functions in livestock. (Compl. ¶ 1.) Specifically, Priority makes and sells the Priority Ration program, a combination of two products, P-One (which is fed to milking animals) and DCP (which is fed pre-calving) along with dietary formulations which are unique and novel to Priority. (*Id.* ¶ 12.) Priority's products and dietary program are sold throughout the United States by direct sales to customers and sales through Resellers. (*Id.* ¶ 1.)

Bryk is a doctor of veterinary medicine. (*Id.* ¶ 2.) Priority asserts it engaged Bryk to consult with them in the expansion of Priority's Reseller network, promote Priority products, and assist in nutrition training for Priority customers. (*Id.* ¶ 19.) Bryk entered into a Consulting Agreement with Priority on May 27, 2010. (*Id.* ¶ 3.) The Consulting Agreement contains two restrictive covenants, one of which contains three separate subsections, set forth in one long sentence:

> 9. Restrictive Covenants.
>     a. Covenant Not To Compete. As consideration for the terms of this Agreement, especially those at Paragraph 4 above, the Consultant agrees that he shall not at any time during the Restricted Period (as hereinafter defined), directly or indirectly, as a proprietor, agent, officer, director, employee, partner, stockholder, consultant, owner or otherwise:
>
>     (i) Acquire an ownership interest in, work for, render advice or assistance to or otherwise engage in the business of the Company with or for any Competitor (as hereinafter defined); or
>
>     (ii) Divert, or attempt to divert any business from the Company or contact, solicit, or entice, or attempt to contact, solicit or entice any present or future customer of the Company or any person with whom the Company is conducting negotiations or to whom the Company has submitted a bid so as to cause, or attempt to cause, any of said customers or persons not to do business with the Company or to purchase products or services sold in the business from any source other than the Company; or

> (iii) Induce, attempt to induce or hire any person who is or has been an employee of the Company to accept employment with a Competitor.

(ECF No. 1-1 at 36.)

Subsection b defined "Competitor" as follows: "For purposes of this Section, the term "Competitor" shall mean any business, incorporated or otherwise and located in the United States providing the materially similar products or services as those provided by the Company during the term of this Agreement." *Id.* at 36. Subsection h of Section 9 defined "Restricted Period" as "the term of this Agreement and ending on the second (2nd) anniversary date of such termination." *Id.* at 38.

The Consulting Agreement contained a second, divisible restrictive covenant as set forth in Section 9(e):

> Nondisclosure of Confidential Information. Consultant shall not at any time disclose any Confidential Information to anyone other than to employees of the Company, to employees of governmental agencies, or to person engaged to render services or provide materials or supplies to the Company, in each case to whom such disclosure is reasonably required in the ordinary course of the Company's business. CONSULTANT HEREBY AGREES THAT THE PROVISION OF THIS ARTICLE SHALL NOT BE CONSTRUED TO CONSTITUTE: (a) A WAIVER BY THE COMPANY OF ANY OF ITS RIGHT IN OR TO PROTECT SPECIFIC ITEMS OF THE COMPANY'S PROPRIETARY INFORMATION WHICH CONSTITUTE TRADE SECRETS, OR (b) A RELEASE OF OR A LIMIT ON THE CONSULTANT'S LEGAL OBLIGATION NOT TO DISCLOSE OR MISAPPROPRIATE ANY SUCH TRADE SECRETS OF THE COMPANY, OR TRADE SECRETS OF OTHERS. The Consultant further agrees that upon the termination of this Agreement he shall surrender to the Company and not remove from the Company's premises any correspondence, files, customer lists, computer disks and all other information which [sic] are then in his possession or under his control.

(*Id.* at 37.) The Consulting Agreement defined "Confidential Information" as follows:

3

> For purposes hereof, "Confidential Information" shall mean and include: (i) formulations, test results, manufacturing specifications, production and manufacturing information and know-how, and all other technical information relating to the manufacture or formulation of the products of the Company; (ii) all information concerning products under development by or being tested by the Company but not yet offered for sale; (iii) all information concerning the pricing policies of the Company, the prices charged by the Company to its customers, the volume of orders of such customers and all other information concerning the transactions of the Company with its customers or proposed customers; (iv) all information concerning the marketing programs or strategies of the company; (v) all financial information concerning the company; (vi) all information concerning the salaries or wages paid to, the work records of and other personnel information relating to employees of the Company; and (vii) any other information determined by the Company to be confidential and proprietary and which is identified as such prior to or at the same time of its disclosure to Consultant. Notwithstanding the foregoing, no information shall be considered to be Confidential Information, and the obligation of nondisclosure set forth in this Agreement shall not apply to, any information (x) that is or becomes publicly known through no fault of Consultant; (y) which Consultant receives from a third party without violation by such source of any obligation to the Company; or (z) which Consultant is legally compelled to disclose, provided Consultant will exercise its best efforts to obtain an order or other reliable assurance that confidential treatment will be accorded to the disclosed Confidential Information.

(*Id.* at 36.)

In early 2011 Bryk, along with co-defendants Gleisner and Lowe (who had entered into separate agreements with Priority), began planning to form a business partnership that would directly compete with Priority. (Compl. ¶ 53.) Priority alleges that the three defendants intended to use Priority's confidential information in the new business. (*Id.* ¶ 54.) In May 2011 Gleisner was directed by Bryk and Lowe to record and retain copies of confidential information and trade secrets disseminated during Priority training in Manitowoc, Wisconsin, which related to the Priority Ration program. (*Id.* ¶ 56.) Gleisner, Bryk, and Lowe represented to the relevant purchasing public that Commodity Blenders Pak (their competing product) was the same as P-One and could be used with

the Priority Ration program. (*Id.* ¶¶ 58–60.) Gleisner, Bryk, and Lowe then marketed their competing product as Goldline, which they represented to be the same as P-one, along with a second product, Goldline Transition, which they represented to be the same as Priority DCP. (*Id.* ¶ 61.) Bryk resigned and terminated his relationship with Priority in August 2011. (*Id.* ¶ 22.)

The Complaint lists the following claims against Bryk: False Advertising (Count I), Misappropriation of Trade Secrets (Wis. Stat. § 134.90) (Count II), Injunctive Relief (Restrictive Covenants) (Count III), Breach of Contract (Count V), Breach of Agency Duty (Count VI), and Conspiracy (Count XI). Along with the complaint, Priority filed a motion for a preliminary injunction requiring the defendants to return certain documents and materials to Priority and enjoining them from using or disclosing certain information concerning the formulation or price of Priority's products or steering customers away from Priority. The parties reached agreement on the terms of an injunction, and on March 7, 2012, the Court entered an Order for Injunctive Relief based upon a stipulation signed by all parties, including Bryk. (ECF No. 19.) Bryk then filed a motion for dismissal of Counts III and V. This Court has since dismissed Count III of the Complaint since it did not differ in substance from Count V, but only sought a different form of relief. (ECF No. 34 at 5.) Thus the discussion here will be limited to Count V.

**LEGAL STANDARD**

The standards governing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure are well established. Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." In deciding whether it is sufficient to state a claim, the court must

5

"accept[ ] the complaint's well-pleaded allegations as true and draw[ ] all favorable inferences for the plaintiff." *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, the court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The allegations must be sufficient "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

**DISCUSSION**

Bryk seeks dismissal of Count V on the ground that the restrictive covenants upon which it is based are unenforceable as a matter of law. Wisconsin law seeks to "encourage[ ] the mobility of workers." *Gary Van Zeeland Talent, Inc. v. Sandas*, 84 Wis.2d 202, 214, 267 N.W.2d 242 (1978). As a result, Wisconsin courts look with suspicion on covenants not to compete. *Farm Credit Services of North Cent. Wisconsin, ACA v. Wysocki*, 2001 WI 51, ¶ 9, 243 Wis.2d 305, 627 N.W.2d 444. Consistent with this policy, the Wisconsin Supreme Court has adopted several "canons of construction" which it applies to covenants not to compete: (1) such covenants are prima facie suspect; (2) they must withstand close scrutiny to pass legal muster as being reasonable; (3)

6

they will not be construed to extend beyond their proper import or further than the language of the contract absolutely requires; and (4) they are to be construed in favor of the employee. *Id.* (citing *Streiff v. American Family Mut. Ins. Co.*, 118 Wis. 2d 602, 611, 348 N.W.2d 505 (1984)). This policy is also reflected in Section 103.465, which states:

> A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any covenant, described in this subsection, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.

Wis. Stat. § 103.465 (2009–10). The Wisconsin Supreme Court has broadly construed the language of this provision to further the underlying policy.

The statute contains two main principles. The first is that non-compete agreements are valid "only if the restrictions imposed are reasonably necessary for the protection of the employer." *Star Direct, Inc. v. Dal Pra*, 2009 WI 76, ¶ 20, 319 Wis.2d 274, 767 N.W.2d 898. In order to satisfy this requirement, a provision must "(1) be necessary for the protection of the employer, that is, the employer must have a protectable interest justifying the restriction imposed on the activity of the employee; (2) provide a reasonable time limit; (3) provide a reasonable territorial limit; (4) not be harsh or oppressive as to the employee; and (5) not be contrary to public policy." *Id.*

The second principle is that if any one portion of the covenant is unenforceable, the entire covenant falls, even if the remaining portions would be enforceable. The Supreme Court qualified this principle in *Star Direct*, however, by holding that where an employment contract contains divisible covenants, the fact that one is found an unreasonable restraint does not invalidate the other if it is otherwise reasonable. 2009 WI 76, at ¶ 78. Restrictive covenants are divisible, the Court

7

held, "when the contract contains different covenants supporting different interests that can be independently read and enforced." *Id.* Under the current state of the law, only when the covenants are not divisible will a finding that one portion is unreasonable and therefore unenforceable result in the conclusion that the entire covenant is unenforceable.

As a threshold matter, Priority contends Bryk's reliance on Section 103.465 is misplaced because he was neither an employee nor an agent of Priority. Priority instead asserts that Bryk was retained as a "Consultant" who would "act as an independent contractor, and not as an employee or agent of [Priority]." (ECF No. 1-1 at 3.) Bryk does not dispute that he was not an employee but he does contend he was an agent as the term is used in Wis. Stat. § 103.465.

Agency status is a question of law. *Brown v. Sandeen Agency*, 2009 WI App 11, ¶ 18, 762 N.W.2d 850 (2008). Thus, Plaintiff's assertion of a legal conclusion — that Bryk was not its agent — is not entitled to an assumption of truth. *See Dixon v. Ladish Co., Inc.*, 785 F. Supp. 2d 746, 748 (E.D. Wis. 2011). The annotations to Wis. Stat. § 103.465 do not contain any cases defining the term "agent." Black's Law dictionary defines an agent as one "who is authorized to act for or in place of another; a representative." BLACK'S LAW DICTIONARY 72 (9th ed. 2009). An agency is "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." RESTATEMENT (THIRD) OF AGENCY § 1.01 (2006).

Plaintiff most notably relies on *County Materials Corp. v. Allan Block Corp.*[1] for the proposition that § 103.465 did not apply in that action (and thus should not apply here). However,

---

[1] 431 F. Supp. 2d 937, 950 (W.D. Wis. 2006).

8

as Bryk notes, the facts of *County Materials* are readily distinguishable from the facts underlying this dispute. *County Materials* involved a dispute between two corporations in which the restrictive covenant was ancillary to a patent licensing dispute. In fact, the *County Materials* court specifically stated "Wis. Stat. § 103.465 does not control this action because the covenant not to compete at issue was not included as part of an employment contract." 431 F. Supp. 2d at 950. *But see Heyde Companies, Inc. v. Dove Healthcare*, LLC, 2002 WI 131, 258 Wis.2d 28, 654 N.W.2d 830 (holding that § 103.465 applies to "no-hire" provision of contract between two businesses).

Unlike the restrictive covenants in *County Materials*, here the covenant not to compete *did* arise from an employment contract (i.e. the Consulting Agreement). Furthermore, the underlying facts — as well as some of Priority's own pleadings — suggest Bryk was in fact an agent. Specifically, Plaintiff alleges "Bryk owed Priority certain fiduciary duties of agent to principal." (ECF No. 1-1 ¶ 135.) The following four paragraphs allege a breach of Bryk's "agency duty." (*Id.* ¶¶ 136–140.) Plus the Consulting Agreement itself suggests Bryk *is* an agent, but with limited authority: "Except for the authority to engage in the activities described in section 1 of this Agreement, consultant agrees that he is not an agent of [the] company." In other words, the agreement states that Bryk is Priority's agent, except when he is not Priority's agent.

Given the Wisconsin's strong public policy encouraging worker mobility, its Supreme Court's liberal construction of the statute, the services called for under the agreement, and Priority's own characterization of the relationship in the contract and in its complaint, I conclude as a matter of law Bryk was an agent of Priority within the meaning of Section 103.465. The restrictive covenants at issue will be analyzed accordingly.

9

**A. Section 9(a)(i)**

The first subsection of 9(a) reads: "Consultant agrees that he shall not at any time during the Restricted Period . . . directly or indirectly, as a proprietor, agent, officer, director, employee, partner, stockholder, consultant, owner or otherwise: (i) Acquire an ownership interest in, work for, render advice or assistance to or otherwise engage in the business of the Company with or for any Competitor. . . ." (ECF No. 1-1 § 9(a).) Bryk contends the restriction is unenforceable for three reasons. First, Bryk contends Priority has no protectable interest in banning his passive ownership of an interest in a "Competitor." Second, Bryk argues the restriction is overly broad because it seeks to restrict him from performing work of *any* kind for a "Competitor." Finally, Bryk argues the restriction is overly broad because it lacks a reasonable territorial limitation. I agree with Bryk's arguments and find the first subsection is unenforceable.

The Wisconsin Supreme Court has stated that the "specified territory" language in Section 103.465 requires a restrictive covenant to contain a "reasonable territorial limit." *Star Direct*, 319 Wis. 2d at 288. The Wisconsin Supreme Court has also explained that there can be an "activity dimension" to the analysis of the territory restriction. *Rollins Burdick Hunter, Inc. v. Hamilton*, 101 Wis. 2d 460, 465 (1981). To be enforceable, the limitations in a restrictive covenant need to be limited to the scope of the employee's job duties. "It is generally proper for the employer, by such a contract, to exact a covenant not to compete in such territory as may constitute the field of the employee's activities, but the covenant can go no further than this." *Behnke v. Hertz Corp.*, 70 Wis. 2d 818, 824 (1975); *see also Wisconsin Ice & Coal v. Lueth*, 213 Wis. 42, 47 (1993). Accordingly, a business activity restraint should be "narrowly drawn." *Nalco Chemical Co. v. Hydro Technologies*, 984 F.2d 801, 805 (7th Cir. 1993). Courts have therefore refused to uphold restrictive

10

covenants in which the business activity restraint has been too broad. *See, e.g.*, *Estate of Schroeder v. Gateway Transp. Co.*, 53 Wis. 2d 59, 69 (1971) (restriction designed to prevent employee from working elsewhere "in the transportation industry" unenforceable). The first subsection here does not contain an activity restraint, nor does it contain a territorial restraint. As Priority notes, the lack of one of these does not render the agreement per se unreasonable, but under these circumstances, I conclude the lack of both of these restraints render the subsection unreasonably broad and accordingly unenforceable. Priority does not have a protectable business interest in preventing Bryk from working for a competitor in any manner, particularly in light of the lack of a geographic limitation. In light of the aforementioned precedent, the first subsection is unenforceable and void as a matter of law.

**B. Section 9(a)(ii)**

The second subsection establishes the following restriction: Bryk is barred from "divert[ing], or attempt[ing] to divert any business from the Company or contact[ing], solicit[ing], or entic[ing], or attempt[ing] to contact, solicit or entice any present or future customer of the Company or any person with whom the Company is conducting negotiations or to whom the Company has submitted a bid so as to cause, or attempt to cause, any of said customers or persons not to do business with the Company or to purchase products or services sold in the business from any source other than the Company." (ECF No. 1-1 § 9(a).)

This subsection is also overbroad. Most significantly, it bans Bryk from soliciting *future* customers — whomever they may be. Wisconsin law has declared such broad restrictions unenforceable. *See, e.g.*, *JT Packard & Assoc. v. Smith*, 429 F. Supp. 2d 1052, 1055–56 (W.D. Wis. 2005) ("The agreement bars defendant Smith from soliciting any customer of plaintiff with which

11

defendant had contact within one year of his termination, which includes any potential customer that defendant had solicited. This is overbroad because it restricts defendant Smith from servicing any customer he tried but failed to solicit while he was working for plaintiff, even if that potential customer went to [defendant's new employer] while Smith was still working for plaintiff or refused to become a customer of plaintiff despite plaintiff's best efforts."). The restriction at issue here is even broader because it potentially limits Bryk's involvement with individuals and entities that had no contact with Priority while Bryk was there and would of (theoretically) had notice as to their identities. Additionally, as discussed earlier, this restriction contains no explicit or implicit geographic scope of any kind. Although Wisconsin courts have stated territorial limitations need not be in express geographic terms, there must nevertheless be a reasonable territorial limit of some kind. *See Rollins Hunter Burdick*, 101 Wis. 2d at 460. The subsection at issue here, however, seeks to ban competition respecting individuals and entities that were not known customers (i.e. unknowable "future" customers). Accordingly, the second subsection lacks any implicit territorial limitation and is unenforceable on these grounds as well. Priority attempts to argue that the pool of customers is limited to "the geographic scope of the United States" but I am not convinced this is a reasonable territorial restriction in this case. (ECF No. 21.) More importantly, Priority has no protectable interest in preventing competition with respect to individuals and businesses that did not even begin to do business with it until after Bryk's spearation. Section 9(a)(ii) is unreasonably broad and accordingly void.

**C. Section 9(a)(iii)**

The third subsection of the restrictive covenant bars Bryk from "induc[ing], attempt[ing] to induce or hir[ing] any person who is or has been an employee of the Company to accept

12

employment with a Competitor." (ECF No. 1-1 § 9(a).) Bryk argues that this provision is invalid under the rationale applied by the Wisconsin Supreme Court in *Heyde Companies Inc. v. Dove Healthcare, LLC*, 2002 WI 131, ¶¶ 14–16, 258 Wis. 2d 28, 654 N.W.2d 830. *Heyde* held the "no-hire" restriction in that case invalid because it restricted the mobility of individuals who had not agreed to such a restriction. 2002 WI 131 at ¶¶ 20–21. But in *Heyde* the no-hire provision was part of an agreement between two companies— a company that furnished physical therapy services to nursing home patients and a company that operated nursing homes. The record in that case suggested that given the number of therapists who worked in the area where the businesses were located and the number of facilities with which the company providing physical therapists contracted, the provision substantially limited the ability of therapists to practice their profession. Here, we are dealing with a motion to dismiss based on the complaint alone. The record is insufficiently developed to permit a ruling on the validity of this provision. Accordingly Bryk's motion will be denied as to the allegations that he breached this part of his contract with Priority.

**D. Indivisibility**

As discussed above, the invalidity of one of several divisible restrictive covenants will not affect the enforceability of others; rather, enforceability is determined independently. In contrast, the invalidity of one of several indivisible restrictive covenants is fatal to the enforceability of the others. *Streiff*, 118 Wis. 2d at 611–13. Bryk contends the three subsections of Section 9(a) of the Consulting Agreement are indivisible. I have concluded that two of the three subsections are unenforceable. If, as Bryk argues, the three subsections are indivisible, Section 103.465 would compel the conclusion that the third is as well. However, I do not think the subsections are indivisible.

13

As discussed above, "[i]n the context of multiple non-compete provisions in a contract, indivisibility will usually be seen by an intertwining, inextricable link, between the various provisions via a textual reference such that one provision cannot be read or interpreted without reference to the other." *Star Direct*, 2009 WI 76 at ¶ 78. Bryk makes much of the fact that the three subsections are each part of one sentence. (ECF No. 21 at 10.) But this fails to account for the fact that (a) the provisions are each clearly separated by semicolons and (b) more importantly they each constitute wholly separate, divisible ideas. Section 9(a)(i) addresses Bryk's ability to own, passively or otherwise, an interest in a Competitor. Section 9(a)(ii) attempts to govern Bryk's ability to contact Priority's customers. Section 9(a)(iii) tries to place no-hire restrictions on other Priority employees. These ideas are completely severable from one another and accordingly I cannot conclude the restrictive covenants set forth in 9(a) are indivisible.

**E. Section 9(e)**

Finally, Section 9(e) of the Consulting Agreement is a "Nondisclosure" provision that seeks to restrict the use or disclosure of "Confidential Information." (ECF No. 1-1.) As discussed earlier, "Confidential Information" was defined in a variety of ways, including, *inter alia*, "formulations, test results, manufacturing specifications, production and manufacturing information and know-how, and all other technical information relating to the manufacture of formulation of the products of the Company."

Bryk contends that Section 9(e) of the Consulting Agreement is governed by, and unenforceable under, Section 103.465. He notes the Wisconsin Supreme Court has held that such confidentiality provisions are subject to Section 103.465 because they constitute a restraint of trade. *See Tatge v. Chambers & Owen, Inc.*, 219 Wis. 2d 99, 112, 579 N.W.2d 217, 222 (1998) (noting

14

that a provision that "seeks to shield its customer data, programs, and business practices from competitors' eyes" . . . "is the essence of a trade restraint"). Under this framework, Bryk asserts Section 9(e) is invalid as it contains "inconsistent" and "unreasonabl[y]" long time restrictions. *See Gary Van Zeeland Talent, Inc. v. Sandas*, 84 Wis.2d 202, 267 N.W.2d 242 (1978) (holding confidentiality provision of contract prohibiting disclosure of customer list unenforceable because it lacked a time limitation).

Priority, on the other hand, contends Section 9(e) is not a restraint on trade but instead seeks to protect only Priority's trade secrets. The distinction is crucial because if the Agreement is limited to trade secrets, then it is governed by the Uniform Trade Secrets Act, Section 134.90 of the Wisconsin Statutes. *Nalco Chem. Co. v. Hydro Technologies, Inc.*, 984 F.2d 801, 803 (7th Cir. 1993). "Under section 134.90, no time limit is required on trade secret restrictions." *Id.* Nor is a territorial restriction required. Laws protecting trade secrets in general, and the Uniform Trade Secrets Act in particular, are exceptions to the general policy against restraints of trade. *Van Zeeland*, 84 Wis. 2d at 209, 267 N.W.2d at 246. Laws protecting trade secrets are seen as "an attempt to enforce morality in business." *Abbott Laboratories v. Norse Chemical Corp.,* 33 Wis.2d 445, 454, 147 N.W.2d 529, 533 (1967). The protection afforded to trade secrets is not limited by time or place.

Bryk's argument that the Section 9(e) of the Consulting Agreement he signed is invalid thus depends on whether the Agreement has as its purpose the protection of trade secrets. Wisconsin law defines trade secrets as:

> information, including a formula, pattern, compilation, program, device, method, technique or process to which all of the following apply:

15

> 1. The information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> 2. The information is the subject of efforts to maintain its secrecy that are reasonable under the circumstances.

Wis. Stat. § 134.90(1)(c). The information covered by Section 9(e) seems to fall within this definition. Unlike the provisions at issue in *Nalco* and *Van Zeeland*, Section 9(e) here appears directed not at customer information but at the very products that Priority sells, as well as the formulas and technology it uses to produce them. This is precisely the type of information the Act is intended to protect. While the Court cannot conclude on the record as it now stands that the information constitutes trade secrets as a matter of law, it is clearly unable to conclude that Section 9(e) of the Consulting Agreement is unenforceable. Accordingly, Bryk's motion to dismiss will be denied to the extent that it seeks relief on the basis of Section 9(e).

## CONCLUSION

In conclusion, Priority's claims under Subsections (i) and (ii) of Section 9(a) are dismissed. Both restrictive covenants are unenforceable on their own terms. However, I am unable to determine on this record whether subsection (iii) is invalid, and because the provisions are divisible, Priority's claim of breach of that provision remains, as does its claim that Bryk breached the confidentiality provision, Section 9(e). In other words, Bryk's motion to dismiss Count V is partially granted and partially denied. His motion to dismiss Count III is moot in light of the Court's

16

previous order. (ECF No. 34.) In all other respects, the motion is denied. Bryk's motion for partial dismissal (ECF No. 20) is therefore GRANTED in part and DENIED in part.

Dated this   31st   day of May, 2012.

                                                                        s/ William C. Griesbach
                                                                         William C. Griesbach
                                                                         United States District Judge

17

Case 1:12-cv-00150-WCG   Filed 06/01/12   Page 17 of 17   Document 36