UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PRIORITY INTERNATIONAL ANIMAL
CONCEPTS, INC.,

        Plaintiff,

  v.                                                 Case No. 12-C-0150

JOHN BRYK, CHARLES GLEISNER, and
KEITH LOWE,

        Defendants.

## DECISION AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS AND STRIKE

Plaintiff Priority International Animal Concepts, Inc. (Priority) filed the present action against Charles Gleisner, a former sales employee, and John Bryk and Keith Lowe, two former consultants for Priority. Priority alleges that the defendants conspired to form a competing business, using proprietary information they learned through the course of their contacts with Priority. Priority asserted twelve separate claims related to the defendants' conduct in a second amended complaint. Before me now are motions to dismiss certain claims and to strike certain allegations filed by Gleisner and Bryk.[1] (ECF Nos. 61 & 64.) In particular, these defendants move to dismiss Priority's claims of false advertising and breach of agency duty(Counts I, VI, and IX) on the ground that the claims fail to comply with the pleading requirements under Rule 9(b) of the Federal Rules of Civil Procedure. The defendants also move to strike twelve paragraphs of

---

[1] Lowe has not joined Gleisner or Bryk in their motions to dismiss.

Priority's complaint that allege fraud (Compl. ¶¶ 69-73, 75-89, 91-94, 135, ECF No. 52)[2] pursuant to Rule 12(f) and 9(b). The defendants' motions will be denied because Rule 9(b) does not apply to either claim and neither claim sounds in fraud. To the extent fraud is alleged in the complaint, it is alleged with sufficient particularity to meet the standard under the circumstances.

**BACKGROUND**

Using microbiological-based technologies, Priority develops and markets dietary products designed to enhance digestive functions in livestock. The specific product relevant to this case is Priority's product line called the "P-One Program" that consists of two products: P-One and Priority DCP. P-One is fed to milking animals and Priority DCP is fed pre-calving. Pursuant to its efforts to market the P-One Program, Priority hires and trains employees and consultants to sell its dietary program to customers.

The events giving rise to Priority's allegations began sometime in early 2011. Gleisner was an entry level sales employee for Priority, employed between September 2010 and November 2011. (*Id.* ¶¶ 29, 42.) Byrk was hired as a consultant for Priority, the engagement period of which began in May 2010 and ended August 2011. (*Id.* ¶¶ 19, 25.) Lowe was also hired as a consultant, the engagement period of which ran from May 2010 to March 2011. (*Id.* ¶ 50; Amend. Compl. Ex. 4, ECF No. 47-3.) Gleisner, Byrk, and Lowe each signed agreements that obligated them to keep Priority's proprietary information confidential and otherwise to not use the information for their own benefit or to the detriment of Priority. Priority alleges that Gleisner, Byrk, and Lowe entered

---

[2] All citations referring to Priority's allegations are to the Second Amended Complaint (ECF No. 52) unless otherwise noted.

into a scheme to form a business partnership that would directly compete with Priority using proprietary information gained through two training sessions conducted by Priority in October 2010 and May 2011, which Defendants attended. (Compl. ¶¶ 16-18, 53-57.) Beginning in September 2011, Gleisner, Byrk, and Lowe began distributing products called Commodity Blenders Pak, Goldline, and Goldline Transitions to Priority's customers. (*Id.* ¶¶ 61-63.)

Priority also alleges that "Bryk, Gleisner, and Lowe have made, published, disseminated, circulated, or otherwise placed before the public an advertisement, announcement, statement, or representation which asserts" that the Commodity Blenders Pak, Goldline, and Goldline Transitions products "may be used with the P-One Program" instead of the P-One and Priority DCP products. (*See id.* ¶¶ 75-86.) Priority avers further that the defendants are representing to Priority's existing customers and potential customers in Ohio, New York, and Virginia that the Commodity Blenders Pak, Goldline, and Goldline Transitions products may be used with Priority's P-One Program in place of Priority's P-One and Priority DCP products. (*Id.* ¶¶ 69-73.) Priority, in its complaint, alleged a false advertising claim for violation of the Lanham Act 15 U.S.C. § 1125(a)(1)(B) as well as Ohio Revised Code § 4165.02(A)(1)-(3), (7), (9)-(10); New York Code §§ 349, 350, and 350a; and Code of Virginia § 59.1-200(A)(5), (6), and (14).

**LEGAL STANDARD**

The standards governing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure are well established. Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." In deciding whether it is sufficient to state a claim, the court

3

must "accept[ ] the complaint's well-pleaded allegations as true and draw[ ] all favorable inferences for the plaintiff." *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, the court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The allegations must be sufficient "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## ANALYSIS

Priority's second amended complaint clearly meets the pleading standard set forth above. The defendants maintain, however, that the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) applies to Priority's false advertising claim under the Lanham Act and its common law breach of agency duty claim. The defendants are mistaken.

Rule 9(b) is an exception to the general rule that a complaint need only provide fair notice of what the plaintiff's claim is and the grounds upon which it rests. The Rule creates a heightened pleading standard for fraud, requiring the party alleging fraud to "state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). In order to satisfy the heightened

4

pleading requirement, the complaint must allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated," *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir.1992) Defendants contend that the false advertising and breach of agency claims in the Second Amended Complaint fail to comply with this standard and they should therefore be dismissed.

But fraud is not an element of Priority's Lanham Act or breach of agency duty claims and neither claim rests on allegations of fraud. Rule 9(b) by its terms therefore does not apply. In arguing that Rule 9(b) does apply, defendants rely on the Seventh Circuit's decision in *Borsellino v. Goldman Sachs Group, Inc.*, where the court held that Rule 9's heightened pleading standard applied in that case to claims for tortious interference with economic advantage, interference with fiduciary relationship, and conspiracy. 477 F.3d 502 (7th Cir. 2007). The court noted, apparently in relation to an earlier version of the Rule, that "Rule 9(b) applies to 'averments of fraud,' not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations." *Id.* at 507. Although fraud is not an essential element of the tort claims asserted in that case, the court concluded that the heightened pleading standards of Rule 9(b) nevertheless applied because the claims as alleged sounded in fraud, i.e., they were "premised upon a course of fraudulent conduct." *Id.* As the court explained, "[t]he first paragraph of the complaint begins: 'This action arises out of a pattern of fraud and racketeering activity,' and the complaint goes on to accuse Goldman Sachs of being 'a conspirator with Putnam in defrauding Plaintiff into abandoning his interest in CTA, and thus his rights to one-third of Archipelago.'" *Id.* The fraud alleged in the complaint was the basis of the other claims, and thus they clearly sounded in fraud.

5

That is not the case here. Although there are general allegations that the defendants made representations that were false and/or misleading and with clear intent to deceive the public and injure Priority (Second Am. Compl. ¶¶ 69-73), these allegations are not essential to Priority's false advertising or breach of agency duty claims. Even in the absence of the challenged allegations, the claims would survive. In effect, the defendants' motions amount to a request that the court edit Priority's lengthy 169-paragraph complaint by striking twelve of them.

Defendants note that the particularity requirement is intended to protect individuals and businesses from unfair prejudice. The Seventh Circuit has observed, for example, that "[a]ccusations of fraud can do serious damage to the goodwill of a business firm or a professional person." *Bankers Trust Co. V. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992). The requirement that fraud be pled with particularity requires a party to undertake some investigation before making such an allegation. Defendants suggest that the same rationale applies to Priority's false advertising and breach of agency duty claims. But there are worse allegations than fraud that one can level against another person or business, and the heightened pleading standard does not apply to them. There are also ways of protecting parties from unfair allegations made without factual support or simply to harass. *See* Fed. R. Civ. P. 11(c). The need to protect litigants from embarrassing allegations made without a solid basis is not a sound reason for expanding the heightened pleading standard of Rule 9 to claims that do not sound in fraud, an expansion that would only lead to more unproductive motion practice.

Defendants also rely on a series of district court decisions from this circuit that have applied Rule 9(b)'s heightened pleading standard to false advertising claims. See, e.g., *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 709 (N.D. Ill. 2006); *Platinumtel*

6

*Commc'ns., LLC v. Zefcom, LLC*, No. 08-CV-1062, 2008 WL 5423606, at *1 (N.D. Ill. Dec. 30, 2008); *MPC Containment Sys., Ltd. v. Moreland*, No. 05-C-6973, 2006 WL 2331148, at *2-3 (N.D. Ill. Aug. 10, 2006); *Merix Pharm. Corp. v. GlaxosmithKlein Consumer Healthcare, L.P.*, No. 05-C-1403, 2006 WL 1843370, at *2 (N.D. Ill. Jun. 8, 2006); *see also Marvellous Day Elec. (S.Z.) Co., Ltd. v. Ace Hardware Corp.*, __ F. Supp. 2d __, 2012 WL 4579511, at *2 (N.D. Ill. 2012). The court finds little by way of analysis in any of these cases, however, and declines to follow them.

Instead, in *Villano, Inc. v. CBS, Inc.*, 176 F.R.D. 130 (S.D.N.Y. 1997), the court provided a brief but persuasive analysis to support its conclusion that Rule 9(b)'s heightened pleading requirement does not apply to false advertising claims. The *Villano* court first noted that the making of a false statement, not fraud, is the essential element in a false advertising claim, and making a false statement is not one of the "special matters" that Rule 9 requires be specially pleaded. The court then explained that a false advertising claim under the Lanham Act is significantly different than a claim of fraud:

> Fraud requires, not just the making of a statement known to be false, but also, *inter alia*, a specific intent to harm the victim and defraud him of his money or property . . . . That is why Rule 9(b) has been interpreted to require, not just a specification of the alleged misrepresentations, but also a particularization of the facts giving rise to a strong inference that defendant acted with fraudulent intent. *See, e.g., San Leandro Emergency Med. Plan v. Philip Morris Cos.*, 75 F.3d 801, 813 (2d Cir. 1996); *O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991); *Devaney v. Chester*, 813 F.2d 566, 568 (2d Cir. 1987). By contrast, no fraudulent intent nor even a "willful [ ] intent to trade on the owner's reputation or to cause dilution of the famous mark" is required under 15 U.S.C. § 1125.

*Id.* at 131.

There are also practical reasons that support the conclusion that the heightened pleading standard of Rule 9 does not apply to false advertising claims. Advertising is often conducted by large corporations through other corporate advertisers. The specific personnel involved in producing and authorizing the allegedly false advertising within the corporate structure will typically be unknown, absent discovery. A business injured by false advertising should not be deprived of a remedy to address such harm simply because it has yet to discover all of the details as to who is responsible and whether they acted with intent or not, especially since these facts are not even material to the claim. The fact that intent to deceive is not an element also means that the damage from an allegation of false advertising is not damaging to the reputation of an individual or business in the same way as an allegation of fraud is. False advertising claims also serve the public interest of protecting the consumers from confusion and loss. For all of these reasons, the heightened pleading standard of Rule 9 should not be imposed on Lanham Act claims of false advertising.

There is likewise no reason to impose the heightened pleading standard of Rule 9 on Priority's claim that the defendants breached their duties as plaintiff's agents. Again, fraud is not an element of the claims, and the claim does not sound in fraud. Instead, the defendants are alleged to have breached their duty of loyalty to Priority by using and disclosing Priority's confidential information and trade secrets unbeknownst to Priority and contrary to the interests of Priority so as to benefit themselves, all while continuing to receive payment from Priority as Priority's agents. No sound reason has been offered for requiring greater particularity for this claim.

Finally, even if the heightened pleading standard of Rule 9 did apply, the defendants' motion would be denied. The defendants contend that Priorty's complaint is insufficient because

8

the allegations are frequently made on "information and belief," the allegations lump Gleisner, Bryk, and Lowe together, and the allegations are not sufficiently definite in describing the who, when, what, where, and how the alleged false advertisements were made. In order to satisfy Rule 9(b)'s heightened standard when it applies, the complaint must allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992). In other words, the complaint must provide the "who, what, where, when, and how" of the alleged fraudulent conduct.

Count I of the complaint adequately describes the particularized facts supporting the course of conduct allegedly undertaken by the defendants. Priority alleges that since September 2011, the defendants "made, published, disseminated, circulated, or otherwise placed before the public an advertisement, announcement, statement, or representation" asserting that the defendants' Commodity Blenders Pak, Goldline, and Goldline Transitions products were identical to Priority's products and could be used in place of the P-One and Priority DCP products. (Compl. ¶¶ 75-88.) Priority also alleges that the defendants disseminated this information to Priority customers and potential customers in the New York, Virginia, and Ohio geographic regions. (Compl. ¶¶ 73-74.) These allegations are sufficient in describing the "who," the defendants, the "what," the false advertisements, the "where," New York, Virginia, and Ohio, the "when," since September 2011, and the "how," disseminating the advertisements to Priority customers and potential customers. *See, e.g., Axcan Scandipharm Inc. v. Ethex Corp.*, 585 F. Supp. 2d 1067, 1084 (D. Minn. 2007); *Nutrition & Fitness, Inc. v. Mark Nutritionals, Inc.*, 202 F. Supp. 2d 431, 434 (M.D.N.C. 2002); *Thermal Design*, No. 08-C-828, 2009 WL 1181327, at *3.

9

Although the complaint does not identify the particular person who made and disseminated the false advertisements, this is not fatal to Priority's Complaint. It is difficult to see how Priority, at the pleading stage, can be expected to identify who among the three Defendants made and disseminated the false advertisements. Other courts have noted that the particularity requirement "must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim." *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998). Citing *Jepson, Inc. v. Makita Corp*, 34 F.3d 1321 (7th Cir. 1994), the defendants also maintain that the complaint is deficient because Priority does not identify any specific customer to whom the false advertisements were sent. The defendants' reliance on *Jepson* for this proposition is misplaced. *Jepson* concerned plaintiff's allegations of mail and wire fraud. The *Jepson* court explained that the complaint was deficient because the plaintiff did not identify any party to the alleged communications, the details of which were "mandated not only by Rule 9(b), but by the very nature of a RICO claim." *Id.* at 1328. Unlike RICO claims, false advertising claims under the Lanham Act do not require such specificity as to the recipients of the advertisement. Advertisements by their very nature are directed to an anonymous public audience. *See First Health Group Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 803-04 (7th Cir. 2001). Priority's allegations that the advertisements were disseminated to Priority's customers and potential customers in New York, Virginia, and Ohio are therefore sufficient.

The defendants also argue that Priority's allegations are deficient because they rely on "information and belief." The defendants are generally correct that Priority does not have unlimited latitude to support its allegations through information and belief. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreens Co.*, 631 F.3d 436, 442-43 (7th Cir. 2011).

10

However, the general rule that averments of fraud cannot be solely supported by information and belief is not applicable in situations where "(1) the facts constituting the [fraudulent conduct] are not accessible to the plaintiff and (2) the plaintiff provides 'the grounds for his suspicions.'" *Id.* (quoting *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir.1992)). Here, Priority alleges that the defendants engaged in a scheme to steal its proprietary information to develop the Commodity Blenders Pak, Goldline, and Goldline Transitions products and subsequently market the product to Priority's customers. It cannot be expected that Priority is privy to every particularized fact evidencing the alleged scheme. However, Priority has adequately provided grounds for its suspicions. Priority alleges that Gleisner recorded the training session he attended in May 2011 where Priority disclosed its proprietary information and that he disclosed this information to Bryk and Lowe. (Compl. ¶¶ 18, 56.) In addition, Priority alleges that when Gleisner returned the laptop computer and cell phone provided by Priority, the data contained on the laptop and cell phone were erased in such a way that Priority could not determine whether Gleisner downloaded or sent its proprietary information to a third party. (*Id.* ¶¶ 35-41.) This supports the contention that the facts constituting the fraud are not accessible to Priority. Moreover, the most salient grounds for suspicion Priority alleges is the fact that a former sales employee and two consultants were marketing competing products that could be substituted for Priority's products. Based on the foregoing, I conclude that Priority has alleged plausible grounds for its suspicions. *Pirelli*, 631 F.3d at 443 ("[W]hen someone alleges fraud based on information and belief, not just any grounds will do. The grounds for the plaintiff's suspicions must make the allegations plausible . . . .").

11

Thus, even if the heightened pleading standard did apply to the allegations suggestive of fraud, they are adequately met. Priority's complaint contains as much particularity as could be expected at this stage of the proceedings. The 169 paragraphs of detailed allegations in the second amended complaint provide more than sufficient notice to the defendants as to Priority's claims and the factual basis for them. The detail and breadth of the allegations also demonstrate that, to the extent allegations of fraud are present, a sufficient factual basis is provided.

## CONCLUSION

Based on the foregoing reasons, the defendants motions (ECF Nos. 61 & 64) to dismiss and strike portions of Priority's Complaint for failure to comply with Rule 9(b) are **DENIED**.

**SO ORDERED** this   1st   day of December, 2012.

                                             s/ William C. Griesbach
                                             William C. Griesbach, Chief Judge
                                             United States District Court